UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| SERELL BUTTS, | |
| Plaintiff, | Case No. 2:08-cv-235 |
| v. | HON. R. ALLAN EDGAR |
| UNKNOWN RILEY, et al., | **OPINION** |
| Defendants. | |

**I. Facts**

Plaintiff Serell Butts, an inmate currently confined at the Alger Maximum Correctional Facility, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections. Specifically, Defendants include Chaplain Riley, Resident Unit Officer Stasewich, Special Acts Coordinator Michael Martin, Patricia Caruso, Dave Bergh and Inspector Contreras.

Plaintiff's complaint alleges that he was denied a kosher diet. Plaintiff alleges that while he was confined at Baraga Maximum Correctional Facility he was approved by Chaplain Snyder for a kosher diet. Plaintiff was transferred to Alger Maximum Correctional Facility for the sole purpose of obtaining a kosher diet which is offered at that facility. Plaintiff alleges that on September 5, 2007, he was forced to sign off the kosher diet program by Sergeant Beluser. Sergeant Beluser witnessed plaintiff eating non-kosher foods. Plaintiff asserts that he signed off the kosher diet out of fear.

Plaintiff filed a number of grievances against defendant Stasewich for sexual harassment. On May 2, 2008, Chaplain Riley denied plaintiff's kosher diet request. Plaintiff sent

letters to defendant Special Acts Coordinator Michael Martin, Director Caruso, and Inspector Contreras. Plaintiff claims that his Eighth Amendment rights were violated by defendant Stasewich and that his First Amendment freedom of religion rights were violated by defendants.

**II. Analysis**

**A. Standard of Review**

On September 21, 2009, the court dismissed Plaintiff's claims against Defendant Contreras without prejudice for lack of exhaustion (docket #61). Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support

of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

### B. Eighth Amendment

Defendants state that they are entitled to summary judgment on Plaintiff's Eighth Amendment claims because the alleged misconduct by Defendants does not rise to the level of an Eighth Amendment violation. Plaintiff claims that Defendant Stasewich made sexual comments towards Plaintiff and touched him inappropriately on a single occasion. Plaintiff also claims that other Defendants failed to take corrective action against Defendant Stasewich.

"[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir.

2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Other courts have held that even minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared

sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

On March 6, 2008, and March 21, 2008, Plaintiff filed grievances against Defendant Stasewich for sexual harassment. In the first grievance, Plaintiff contends that Defendant Stasewich told him that if he wanted to eat or go to the general population, he had "betta jack off on [Defendant Stasewich] like [he did] on female staff and that old psych" that had just closed Plaintiff's window. Plaintiff also asserted that Defendant Stasewich tried to play peek-a-boo while asking, "is it hard yet?" (Plaintiff's Exhibit A, p. 1, docket #1.) In the second grievance, Plaintiff states that while taking him to health services, Defendant Stasewich jabbed his fingers into Plaintiff, just above his buttocks. Plaintiff ceased walking and asked Defendant Stasewich to stop touching him in that manner. Defendant Stasewich then stated that Plaintiff had snitched on him in the earlier grievance and that Plaintiff was lucky that Defendant Stasewich did not rape him. (Plaintiff's Exhibit B, p. 1, docket #1.)

On April 15, 2008, Plaintiff filed another grievance on Defendant Stasewich, stating that after Plaintiff had taken the test to be approved for a kosher diet, Defendant Stasewich told him that he would not be approved for the diet "thanks to [Defendant Stasewich]." (Plaintiff's Exhibit C, p. 1, docket #1.) Defendant Riley subsequently denied Plaintiff's kosher diet request. (Plaintiff's Exhibit D, p. 1, docket #1.)

Defendant Stasewich denies any inappropriate comments or touches. (Defendants' Exhibit A.) Resident Unit Officer Dale Kurth attests that on March 19, 2008, he assisted Defendant

Stasewich in escorting Plaintiff from his cell to health services. Kurth states that Defendant Stasewich never touched Plaintiff inappropriately, nor did he make any inappropriate or threatening comments towards Plaintiff. (Defendants' Exhibit B.)

The court concludes that if true, Defendant Stasewich's conduct toward Plaintiff was reprehensible, but it does not rise to the level of an Eighth Amendment violation. Plaintiff does not allege that Defendant Stasewich ever did more than jab him above his buttocks on one occasion and make a few inappropriate comments. Acts of verbal sexual harassment, standing alone, are insufficient to state a claim under the Eighth Amendment. *See Morales*, 278 F.3d at 132; *Zander*, 1998 WL 384625, at *2. Also, as noted above, minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation Therefore, Plaintiff's allegation fails to state an Eighth Amendment claim against Defendants.

**C. Free Exercise**

Defendants also contend that they are entitled to summary judgment on Plaintiff's First Amendment free exercise claims because he was afforded a reasonable opportunity to exercise his religious beliefs. Defendants claim that they are entitled to summary judgment on Plaintiff's claim that the denial of a Kosher diet violated his First Amendment right to freely exercise his religious beliefs. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest". *See, for example, Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, Plaintiff's constitutional rights are subject to severe restriction. *See, for example, Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v.*

*Ramirez*, 418 U.S. 24 (1974) (vote). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations." *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id.* at 90. "Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

> In determining whether a prisoner's particular religious beliefs are entitled to free exercise protection, the relevant inquiry is not whether, as an objective matter, the belief is "accurate or logical."

> *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir.1996). Instead, the inquiry is "whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things, religious." *Patrick [v. LeFevre]*, 745 F.2d at 157 (quoting *United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965)) (alteration in original) (emphasis added). A claimant need not be a member of a particular organized religious denomination to show sincerity of belief. *See Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 103 L. Ed.2d 914 (1989).

*Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999).

In *Jackson v. Mann*, the Second Circuit held that the district court erred in substituting the objective "accuracy" of the Plaintiff's assertion that he was Jewish for the correct test – whether the Plaintiff's beliefs were sincerely held. 196 F.3d at 320. The pertinent issue in *Jackson*, as in this case, was whether the plaintiff was entitled to receive a Kosher diet. *Id.* at 318. The Second Circuit concluded that the defendants in *Jackson v. Mann* were not entitled to summary judgment because even if the plaintiff was not Jewish according to Judaic law, this did not resolve the continuing issue of material fact regarding the sincerity of the plaintiff's religious beliefs. *Id.* at 320-21.

Similarly, in *Mosier v. Maynard*, 937 F.2d 1521 (10th Cir. 1991), the Tenth Circuit held that merely because the plaintiff was not a member of the Cherokee nation or the Native American worship group at his prison, it did not mean that his belief was insincere. *Id.* at 1523.[1] As noted by the Tenth Circuit in *Mosier*[2], the United States Supreme Court has rejected the idea that membership in a religious organization is a prerequisite for religious convictions to be judged sincere. *Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 1517-18 (1989).

---

[1] The plaintiff in *Mosier* was seeking an exemption from the prison's requirement that hair be kept to a certain length.

[2] *See Mosier*, 937 F.2d at 1523.

In support of their motion for summary judgment, Defendants assert that during his interview with Defendant Riley, he asked Plaintiff to explain the basic teachings of his religion. Plaintiff's response was generic and limited: "Monotheistic, belief in one God, not to eat fat or blood, daily reading of the Torah, Jewish people keep kosher. Live the Ten Commandments." (Defendants' Exhibit C, ¶ 6.) When Defendant Riley asked Plaintiff why a kosher diet was required, Plaintiff responded that "God told us to eat kosher as part of his Commandments." (Defendants' Exhibit C, ¶ 7.) In response to a question about how kosher food differs from other institutional food, Plaintiff stated that utensils were cleaned separately and that meat and dairy are not served together. When Defendant Riley asked Plaintiff which foods were forbidden, he stated that "anything with split hoof [sic] and chews cud is allowed, not allowed to eat fish without scales and flying craters with 'leaper' legs." (Defendants' Exhibit C, ¶ 8.) Defendant Riley attests that Plaintiff was unaware that the Jewish holiday of Passover was only a few days away from the date of the interview. (Defendants' Exhibit C, ¶ 9.)

Defendant Riley states that the answers offered by Plaintiff were very generic and similar to the answers that "float around the prison." In addition, Defendant Riley notes that the fact that Plaintiff had previously voluntarily given up the kosher diet showed a lack of sincerity in the desire to keep kosher. Also, the fact that Plaintiff was unaware of the dates of Passover, which is the major Jewish holiday and was only a few days away showed Plaintiff's lack of knowledge and sincerity. At the time that Defendant Riley recommended denial of Plaintiff's Kosher diet, he was unaware of any grievance filed by Plaintiff against Defendant Stasewich and based his recommendation on Plaintiff's limited and generic knowledge of Judaism. (Defendants' Exhibit C, ¶¶ 10-13.)

Defendants further note that there are compelling economic interests to be considered, and that providing kosher meals requires extra effort and expense. Separate kosher kitchens are maintained at select prison sites within the MDOC because it is expensive to build an equip a kosher kitchen. The kosher kitchen and food storage area are limited in size, so that it is important to use the facilities to accommodate prisoners who are truly sincere in their religious beliefs. In addition, Defendants assert that the cost of providing kosher meals to prisoners in the MDOC is two to three times as much as the cost of providing regular meals. Finally, Defendants claim that providing kosher meals to prisoners who are not sincere in their religious beliefs is offensive to those prisoners who's religious beliefs are sincere, which could lead to conflict within the prison. Finally, prisoners may seek to be placed on a kosher diet as a way of obtaining a transfer to a facility which has a kosher kitchen. (Defendants' Exhibit E, Affidavit of Special Activities Coordinator Michael Martin, ¶8.)

In this case, under a totality of the circumstances approach, Defendants have articulated valid reasons which justify the refusal to provide plaintiff a kosher diet. Based upon the information gathered by Defendants, it was not unreasonable to deny Plaintiff's request. The policy used by the prison and the interview process is not a pass or fail test. The prison must use some objective factors to justify the decision to deny a kosher meal request. The prison must have some standards to determine the sincerity of a religious belief before granting an accommodation request. Accordingly, Defendants' determination that Plaintiff showed a lack of sincerity should not be disturbed by this Court.

**C. Retaliation**

Defendants state that they are entitled to summary judgment on Plaintiff's retaliation claims because the decision to deny Plaintiff's kosher diet request was not based on Plaintiff's exercise of a constitutional right. As noted above, Plaintiff claims that he was denied a kosher diet

in retaliation for filing grievances on Defendant Stasewich. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). However, Defendants state that Plaintiff was denied a kosher diet because of his lack of knowledge regarding Judaism and the characteristics of a kosher diet, not because of his use of the grievance system. As noted above, Defendant Riley attests that the answers offered by Plaintiff were very generic and similar to the answers that "float around the prison," Plaintiff had previously voluntarily given up the kosher diet, and that Plaintiff was unaware of the dates of Passover, which is the major Jewish holiday and was only a few days away. Finally, Defendant Riley states that at the time of his recommendation, he was unaware of any grievance filed by Plaintiff against Defendant Stasewich and based his decision on Plaintiff's limited and generic knowledge of Judaism. (Defendants' Exhibit C, ¶¶ 10-13.) Because the record shows that Plaintiff was denied a kosher diet because of his lack of knowledge regarding Judaism and the characteristics of a kosher diet, Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

**D. Conspiracy**

Plaintiff maintains that there was a conspiracy between Defendants Stasewich, Riley and Bergh to deny him a kosher diet. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985). In order to prove a civil conspiracy, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, and that an overt act was committed in furtherance of the conspiracy. *Moore*, 890 F.2d at 834; *Hooks*, 771 F.2d at 943-944. As noted by Defendants, the record fails to show that they shared a single plan. Therefore, Plaintiff's claim of conspiracy is without merit.

**E. Personal Involvement**

Defendants Caruso and Contreras contend that the are entitled to summary judgment for lack of personal involvement. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and

that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Contreras and Caruso were personally involved in the activity which forms the basis of his claim. Plaintiff's only allegations against Defendants Contreras and Caruso are that they refused to take corrective action after he informed them of the allegedly improper denial of a kosher diet. Defendants Contreras and Caruso cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999),

*cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Defendants Contreras and Caruso are entitled to summary judgment for lack of personal involvement.

**F. Eleventh Amendment**

Defendants assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[3] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

**G. Qualified immunity**

Defendants also assert that Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government

---

[3] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As noted above, Defendants did not violate Plaintiff's constitutional rights. Accordingly, they are entitled to qualified immunity.

### H. Plaintiff's Motion for a Restraining Order

Plaintiff seeks a motion for a restraining order and / or in the alternative sanctions. However, because Defendants are entitled to summary judgment in this action, Plaintiff's motion is properly denied as moot.

### III. Conclusion

In light of the foregoing, the court concludes that Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #42) be granted and that this case be dismissed in its entirety.

An Order consistent with this Opinion will be entered.


Dated: 2/26/2010                                       /s/ R. Allan Edgar
                                                                    R. ALLAN EDGAR
                                                                    UNITED STATES DISTRICT JUDGE